IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

v.  CASE NO. 5:07-cr-41-RS-GRJ

JEROME SESSIONS.

_____/

### REPORT AND RECOMMENDATION

This case is before the Court on Doc. 110, Defendant's *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The motion stems from Defendant's jury trial conviction for one count of possession with intent to distribute more than 5 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B). Defendant was sentenced to 360 months imprisonment followed by 8 years of supervised release. The instant motion asserts claims of ineffective assistance of trial counsel. (Doc. 110.) Defendant also asserts that the Fair Sentencing Act of 2010 ("FSA") should apply retroactively to his sentence. (Doc. 134.) Defendant asserted this claim in a motion for judicial notice, which the Court construed as a motion to supplement his motion to vacate. (Doc. 139.) The Government filed a Response, and Defendant filed a reply. (Docs. 121, 131.) Upon due consideration of Defendant's motion to vacate, the Government's response, and Defendant's reply, the undersigned recommends that the motion to vacate be denied.[1]

---

[1] The issues presented by the motion may be resolved on the basis of the record, and therefore no evidentiary hearing is necessary. *See* Rule 8, Rules Governing Section 2255 Proceedings.

## **Background**

The following facts were established at trial: On April 27, 2007, Defendant sold 45.6 grams of crack cocaine to a longtime friend and confidential informant (CI) in the backyard of a family member's home in Bay County, Florida.  The sale was observed by a law enforcement officer.  Defendant later telephoned the CI and demanded $500 in addition to the $2,000 that was exchanged during the initial sale.  The telephone call was recorded.  At his September 2007 trial, Defendant presented the testimony of friends and family members who testified that (1) the voice on the recording of the telephone call was not Defendant; (2) that a new privacy fence at the home where the sale took place had been erected at some point prior to April 27, 2007, making it impossible for the officer to view the transaction; and (3) the CI had a reputation for lying.  An investigator who regularly patrolled the area testified that the fence was installed after April 27, 2007.  (Doc. 93)

Defendant was found guilty of possessing with intent to distribute more than 5 grams of crack cocaine.  He filed motions for a new trial and judgment of acquittal, which were opposed by the Government and denied following an evidentiary hearing. (Docs. 61, 64, 65, 66, 69.)  Defendant, a career offender with a guidelines range of 360 months to life, was sentenced on December 12, 2007 to a 360-month term of imprisonment followed by 8 years of supervised release.  (Docs. 32, 33, 42, 43.) Petitioner unsuccessfully appealed his conviction.  *United States v. Sessions,* 297 Fed. Appx. 835 (11th Cir. 2008)*.*

Defendant filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on October 14, 2009.  Defendant contends that his trial

counsel rendered ineffective assistance for failing to: (1) investigate the credibility of the confidential informant; (2) investigate through voice analysis audio recordings of the CI and Defendant; (3) dispute whether a privacy fence was in place prior to the drug transaction; and (4) raise sentencing objections to the use of the 100:1 powder/crack ratio and the reasonableness of Defendant's sentence. Defendant also asserts that the FSA should be retroactively applied to his sentence. Defendant made a general reference to ineffective assistance of appellate counsel in his motion to vacate, though he offered no facts to support this assertion or to even alert the Court to the specific nature of such a claim. In his reply brief, Defendant expressly withdrew the issue. Accordingly, no claims of ineffective assistance of appellate counsel are before the Court.[2] (Docs. 110, 131, 134, 139.)

## Standard of Review

A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded the court's jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). Collateral

---

[2] On June 10, 2011, approximately a year-and-a-half after the AEDPA's 1-year limitations period expired, Defendant filed a motion to supplement his § 2255 motion to vacate. (Doc. 136.) Defendant sought to amend his initial motion to include two additional claims: (1) his constitutional rights were violated because the prosecution committed a *Brady* violation by failing to disclose that the confidential informant misidentified individuals in other cases and (2) appellate counsel was ineffective for failing to raise a *Brady* issue on direct appeal. (*Id.*); *Brady v. Maryland*, 373 U.S. 83 (1963). The undersigned denied the motion to amend, rejecting the claims as untimely and failing to "relate back" to the original § 2255 motion. (Doc. 139.)

*Case No: 5:07-cr-41-RS-GRJ*

review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). Further, disposition of a claim of error on direct appeal precludes further review in a subsequent collateral proceeding. *See, e.g., Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).

Because Defendant asserts claims of ineffective assistance of counsel, a review of *Strickland* is appropriate. To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of

reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

## Discussion

### (1) Failure to Investigate Credibility of CI

Defendant argues that his trial counsel rendered constitutionally ineffective assistance for failing to investigate information that might impeach the CI. Defendant contends that the CI mistakenly identified another suspect as distributing drugs when the suspect was actually incarcerated. (Doc. 110.)

The issue was addressed in the motions for judgement of acquittal and new trial, and the motions were denied by the district court. The Eleventh Circuit affirmed the district court's denial:

> Sessions's jury had ample evidence on which to find guilt – in particular, the testimony of Louis Gainer, the confidential informant who bought the crack cocaine at issue from Sessions under the supervision of an undercover law enforcement officer, and the testimony of the officer. We could hardly find manifest miscarriage of justice here . . . The evidence Sessions claims he would introduce if granted a new trial is evidence that might impeach some of what Gainer stated on the witness stand, but not his testimony about receiving crack cocaine from Sessions . . . We have reviewed the new evidence Sessions cites and conclude that there is no probability that a new

trial would produce different result.

*United States v. Sessions,* 297 Fed. Appx. 835, 838 (11th Cir. 2008).

At sentencing in December 2007, trial counsel told the Court that the CI had been involved in a case where the suspect he identified was in jail at the time of the alleged drug sale.  Trial counsel said she investigated the CI prior to trial but did not know about his participation in other cases because his name "was being very carefully guarded."  Trial counsel also told the Court that the charges in the alleged misidentification case had been dismissed in open court on September 19.  Defendant's trial concluded nearly a week prior on September 13.  Trial counsel said she spent several hours the day prior to sentencing with other defense attorneys looking at credibility issues with the CI.  (Doc. 89, pp. 4-6.)

In addition to trial counsel's investigation of the CI's criminal history, she presented three witnesses at trial–Defendant's brother, girlfriend, and sister--who testified that the CI had a reputation in the community for untruthfulnesses.  Trial counsel also told the jury in her opening statement that witnesses would testify that "not only did Louis Gainer have those pending charges that he needed some help with, and ended up getting some help, instead of doing prison time, he's now on probation.  That in addition to that, that he's known to be a liar.  He's known to be working with police, and that anybody who knew about him wouldn't be setting up deals with him."  (Doc. 93, p. 23.)

Trial counsel investigated the CI's history and presented witnesses to impeach his credibility.  She investigated the alleged misidentification and presented to the

district court in the motion for new trial and at sentencing. (Docs. 93, 121.) The Eleventh Circuit, on direct appeal, rejected Defendant's argument that new evidence of the CI's misidentification would have affected the outcome of the trial.

Accordingly, on this record, the undersigned concludes that Defendant has established neither the deficient performance nor prejudice prongs of *Strickland* with regard to this claim.

### (2) Failure to Analyze Voice Recordings

Defendant argues that trial counsel "failed to perform any type of investigation into the voice contained on a recording that was made by the C.I., and which allegedly contained the voice of the defendant." (Doc. 110, p. 13.) There were three audiotaped conversations at issue; one where the CI walked up to Defendant and Defendant said the word "two" during the drug transaction at issue;[3] one where Defendant gave the CI instructions to deliver an additional $500 payment; and a third, garbled call. (Doc. 88, pp. 25, 42.) The tapes were played at trial, and the CI identified Defendant as the other voice in the recordings. Defendant presented four witnesses who testified that the voice on the tape was not Defendant (Doc. 93.)

At a hearing conducted approximately one week before trial, where Defendant was present, trial counsel withdrew her motion for voice analysis, explaining that Defendant told her he did not want a continuance to allow for the analysis. (Doc. 117) (sealed transcript). In a November 1, 2009 letter from trial counsel to the Government, she recalled that Defendant "agreed in open court to waive [the motion for voice

---

[3]Apparently when Defendant said "two" he meant that he wanted $2,000 for the crack cocaine he sold the CI. (Doc. 93, p. 42.)

*Case No: 5:07-cr-41-RS-GRJ*

*Page 8 of 13*

analysis] and go to trial." (Doc. 121, Attachment 1.) At the hearing on Defendant's motions for new trial and judgment of acquittal, the district concluded that the recordings "didn't really establish much of anything" and questioned "how the jury could decide that was Mr. Sessions because they never heard Mr. Sessions' voice. They had no basis to make a comparison." (Doc. 88, p. 48.)

Trial counsel attempted to investigate the voice recordings but, at the direction of Defendant, did not seek a continuance to have the tapes analyzed. Defendant was present at the hearing where trial counsel explained that Defendant did not want to delay the trial for voice analysis. (Docs. 116, 117.) Defendant was also present at the subsequent hearing when counsel for the Government recounted that trial counsel said neither she nor her client wanted to ask for a continuance to have the recordings analyzed and "made it clear, and her client was here, they did not want to continue the case under any circumstances, they wanted to go forward as it was." (Doc 88, p. 42.) At neither proceeding did Defendant attempt to contradict the assertion that he agreed to go forward with trial despite the tapes not being analyzed.

Trial counsel withdrew the motion for voice analysis because Defendant did not want a continuance to complete the analysis. (Docs. 88, 116, 117, 121.) At trial, four witnesses were presented to rebut the CI's testimony that the voice on the recordings belonged to Defendant. (Doc. 93.) The district court concluded that the testimony of the CI and the investigator who surveilled the drug transaction was far more important than audiotapes, especially where the jury never heard Defendant's voice to make a comparison. (Doc. 88, p. 48.)

On this record, the undersigned concludes that Defendant has established

*Case No: 5:07-cr-41-RS-GRJ*

neither the deficient performance nor prejudice prongs of *Strickland* with regard to this claim.

### (3) Failure to Dispute When a Privacy Fence Was Installed

Defendant argues that trial counsel rendered constitutionally ineffective assistance by failing to contact the person who installed an 8-foot tall privacy fence around the property where the drug sale occurred.  Defendant contends that the witness would have established that the officer who testified he saw the transaction from outside the home was untruthful, because the fence would have made it impossible to see inside the property from street level.  In his motion to vacate, Defendant does not provide a name or any other identifying information about the fence installer.  (Doc. 110.)  In his reply, Defendant identifies Charles Robinson as the person who installed the fence and attaches a sworn affidavit of Charles Robinson.  Mr. Robinson attests that he "had a personal and business relationship with Jerome Sessions, in late 2006, up until the month of February in the year of 2007"; that he installed the fence beginning in September 2006, and that he told Defendant's family he was willing to testify but was never contacted by trial counsel.  (Doc. 131, p. 16.)

In a November 1, 2009 letter from trial counsel, she indicated that she did not recall being given the name of the person that installed the fence, but did recall Defendant's sister testifying that the fence had been installed prior to April 2007 but she could not locate the paperwork.  (Doc. 121, Attachment 1.)  However, trial counsel did call several witnesses at trial who testified that the fence was installed prior to the April 2007 transaction and therefore the investigator could not have witnesses the drug deal. Defendant's brother, Ricky Sessions, testified the fence was built in stages with the help

of a friend and was up by January 2007.  (Doc. 93, pp. 179, 196.)  Friend Roosevelt Johnson testified the fence was complete in February or March 2007.  (*Id.* at 208.)  Defendant's girlfriend, Dawn Williams, testified the fence was up "way before April." (*Id.* at 216).  Defendant's sister, Jannie Shivers, who rented the home where the transaction occurred, testified that the fence was completed in March 2007.  (*Id.* at 225.)

The Government presented three witnesses at trial who testified the privacy fence was not in place in April 2007: the CI, the investigator who observed the transaction, and a sheriff's office investigator who patrolled the area.  (*Id.* at 44-46, 108, 234-238.)  The patrolling investigator testified that he regularly patrolled the area, at least once a week, and that the fence was built some time after April 2007.  He also testified that before the privacy fence was installed, he could see straight into the backyard.  (*Id.* at 234-237.)

On this record, the undersigned concludes that Defendant has established neither the deficient performance nor prejudice prongs of *Strickland* with regard to this claim.  Trial counsel presented four witnesses who testified that the privacy fence was in place prior to the April 27, 2007 drug transaction.  Even assuming, *arguendo*, that trial counsel was given the identity of Mr. Robinson prior to trial and was deficient for not calling him to testify, Defendant has failed to establish prejudice.  The information in Mr. Robinson's affidavit–which, notably, does not state when the fence was completed–contains no significant information that was not already presented to the jury at trial.  Accordingly, this claim is due to be denied.

### (4) Failure to Raise Sentencing Objections

Defendant argues that trial counsel rendered constitutionally ineffective assistance by failing to object to a guideline range based upon a 100:1 crack/powder ratio, and for failing to object to the sentence as unreasonable. (Doc. 110.) The Defendant's career offender status resulted in a guidelines range of 360 months to life, and he was sentenced at the bottom of that range, to 360 months imprisonment. (Doc. 89, p. 26.)

As to the 100:1 powder/crack ratio argument, the transcript of the sentencing hearing indicates that Defendant's sentencing guidelines were in fact calculated using the 25:1 crack/powder ratio. Trial counsel argued that the base offense level of 28 indicated under the revised guidelines should be further reduced because "he would be sentenced to a Level 26 if he had that much powder cocaine." (*Id.* at 9.) In response, the Government argued that ratio had been reduced that year (2007) and Defendant received the benefit of the two-level crack reduction. (*Id.* at 10.) The Court denied trial counsel's objection regarding the crack/powder ratio. (*Id.* at 10-11.)

As to Defendant's argument that trial counsel failed to object to the sentence as unreasonable, the sentencing transcript indicates that trial counsel argued Defendant should receive a reasonable, below-guidelines sentence and that the guidelines range was greater than necessary to comply with the objectives of 18 U.S.C. § 3553. The Government argued that Defendant should be sentenced as a career offender, noting that he was 4.4 grams of crack cocaine away from facing a mandatory life sentence and had a lengthy criminal history. The district court denied Defendant's request to sentence him below guidelines. (*Id.* at 11-26.) On direct appeal, the Eleventh Circuit

rejected Defendant's argument that in sentencing him as career offender, his 360-month sentence was cruel and unusual punishment in violation of the Eighth Amendment because his offense involved a single sale of crack cocaine. *United States v. Sessions,* 297 Fed. Appx. 835, 838-39 (11th Cir. 2008). The Eleventh Circuit found that the district court correctly calculated the sentence range, consulted the Guidelines, and considered the sentencing factors in § 3553(a), complying with *United States v. Talley*, 431 F.2d 784, 786 (11th Cir. 2005).

The record refutes Defendant's claims that trial counsel did not raise objections regarding crack/powder disparity and the reasonableness of his sentence. Trial counsel argued the issues, they were rejected by the district court, and Defendant received the lowest permissible sentence under the Guidelines. The Eleventh Circuit denied on the merits Defendant's claim that his sentence amounted to cruel and unusual punishment. On this record, the undersigned concludes that Defendant has established neither the deficient performance nor prejudice prongs of *Strickland* with regard to this claim.

## (5) Retroactive Application of Fair Sentencing Act

Defendant filed a motion for judicial notice on March 9, 2011, seeking to use Fed. R. Evid. 201(b) to claim that the Fair Sentencing Act of 2010 (FSA) should apply retroactively to his sentence. (Doc. 134.) The Court, in abundance of caution, construed that motion as a motion to supplement his initial § 2255 motion. (Doc. 139.) As the Court pointed out in its previous order, this claim is due to be denied because first, Fed. R. Evid. 201(b) is not the appropriate procedural mechanism to bring a sentencing claim. Furthermore, the FSA does not apply to Defendant because his

crime and sentence occurred in 2007, well before the FSA took effect on August 3, 2010.  *See, e.g., United States v. Gomes,* 621 F.3d 1343, 1346 (11th Cir. 2010).  And, as the Government pointed out in its response to the motion for judicial notice, even if the FSA did apply to Defendant, it would not effect the duration of his sentence.  (Doc. 135.)  The amount of crack cocaine at issue in Defendant's case was 45.6 grams. (Doc. 93, pp. 33, 41-43, 85, 124, 139.)  He was charged with distribution of more than 5 grams of crack cocaine.  When the FSA took effect, it raised the threshold from 5 grams to 28 grams, with the penalty remaining the same.  Evidence at trial proved that Defendant distributed more than 28 gram and, thus, the FSA would not have affected Defendant's sentence if it were applied retroactively.

Accordingly, this claim is due to be denied.

## Conclusion

In light of the foregoing, it is respectfully **RECOMMENDED:**

That the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, Doc. 110, be **DENIED** and that a certificate of appealability be **DENIED.**

**IN CHAMBERS**  this 22nd  day of March 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**
Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

*Case No: 5:07-cr-41-RS-GRJ*